STEVEN G. KALAR
Federal Public Defender
ELLEN V. LEONIDA
Assistant Federal Public Defender
450 Golden Gate Avenue, 19th floor
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: ellen_leonida@fd.org

Counsel for Defendant,
DIONIS ESCOBAR RAMOS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　PLAINTIFF,<br><br>　　　v.<br><br>DIONIS ESCOBAR RAMOS,<br>　　　　　DEFENDANT. | CR 20-131 SI<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>HONORABLE SUSAN ILLSTON<br>DATE: OCT, 5, 2020<br>TIME: 1:00 P.M. |

**1. INTRODUCTION**

　　Dionis Escobar Ramos intends to plead guilty to a single violation of 21 U.S.C. § 841 for selling $40.00 worth of crack cocaine to an undercover officer in the Tenderloin. His advisory Guideline range is 15-21 months. Mr. Escobar Ramos requests a slight variance from that range, to a sentence of one year and one day in custody. In light of his history, the nature of this offense, and the difficulties of being incarcerated during a pandemic—including the fact that Mr. Escobar Ramos contracted Covid-19 while in custody—a sentence of one year and one day would satisfy the objectives of 18 U.S.C. § 3553(a).

**2. A SENTENCE OF ONE YEAR AND ONE DAY IN CUSTODY WOULD BE SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO SATISFY THE GOALS OF 18 U.S.C. § 3553(A)**

In determining an appropriate sentence, the court must look to the factors set forth in 18 U.S.C. § 3553, among them the applicable sentencing guideline calculation. *United States v. Booker*, 543 U.S. 220, 245-46 (2005); *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court's paramount concern must be to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Carty*, 520 F.3d at 991. Application of the factors listed in Section 3553(a) to this case supports imposition of the mandatory minimum sentence of one year, plus one day in custody.

**2.1 The History and Characteristics of the Defendant and Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))**

Dionis Escobar Ramos grew up in abject poverty in Honduras. Mr. Escobar Ramos' family of 10 lived in a two-bedroom home without electricity. He often went without food, clothing, or shoes. When Mr. Escobar Ramos was only 13 years old, he had to drop out of school (in the 6th grade) to begin working in the fields. PRS ¶¶ 50-51.

In addition to the hardship and poverty, Mr. Escobar Ramos grew up in a country under the constant threat of violence. Whether caused by gangs, an ineffective government, drug trafficking, or poverty, Honduras currently claims the title of "murder capital of the world."[1] The government is blatantly corrupt and has lost international support because of allegations of human rights abuse.[2] There are also allegations of gang infiltration of Honduras' police force.[3]

---

[1] United States Department of State Bureau of Diplomatic Security. Honduras 2018 Crimes and Safety Report, (April 3, 2018). Accessed at: https://www.osac.gov/Pages/ContentReportDetails.aspx?cid=23798

[2] Khan, Carrie, "Honduras Claims Unwanted Title of World's Murder Capital" Parallels (June 12, 2013). Accessed at: https://www.npr.org/sections/parallels/2013/06/13/190683502/honduras-claimsunwanted-title-of-worlds-murder-capital.

"According to the State Department, 42 percent of all cocaine headed to the U.S. and 90 percent of all cocaine flights now travel through Honduras."[4] Like others before him, Mr. Escobar Ramos made the perilous, illegal journey to the United States in search of a future free of corruption, gang violence, and poverty. Shortly after Mr. Escobar Ramos first came to the United States, his brother, with whom he was very close, was murdered by gang members. He is still processing this loss, ten years later.

### 2.2 The Need for the Sentence Imposed To Promote Respect for Law, Provide Just Punishment, and Afford Adequate Deterrence (18 U.S.C. § 3553(a)(2))

A sentence of one year and one day in custody is just and will promote respect for the law because it is long enough to provide specific and general deterrence. A sentence of one year and one day would be the longest sentence Mr. Escobar Ramos has ever received. It is also a sufficiently long sentence for his crime—a street-level sale of two rocks of cocaine base—to send a strong message to the community.

### 2.3 The Need for the Sentence Imposed To Protect the Public from Further Crimes of the Defendant (18 U.S.C. § 3553(a)(2))

Mr. Escobar Ramos has no history of violence and will be deported after serving his sentence. A prison term longer than one year and one day is not necessary to protect the public from him.

### 2.4 The Need for the Sentence Imposed To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner (18 U.S.C. § 3553(a)(2))

Today, any sentence longer that the mandatory minimum necessarily subjects Mr. Escobar Ramos to an increased risk of contracting a deadly virus. The Court is well aware of the nature and scope of the coronavirus pandemic. Within the correctional system, the situation is especially dire. Prisons and jails, which lack proper sanitation and means to accomplish social distancing, are tinderboxes. For example, the rate of infection on Rikers Island is over seven

---

[3] *Id.*

[4] *Id.*

CR 20-131 SI
Defendant's Sentencing Memorandum

3

times the rate of infection in New York City at large.[5] The CDC has recognized that "Correctional and detention facilities face challenges in controlling the spread of infectious diseases because of crowded, shared environments and potential introductions by staff members and new intakes."[6]

Bureau of Prisons facilities where COVID-19 has been detected have developed epidemics alarmingly quickly and continue to spiral. For example, on March 26, 2020, the first person in the city of Lompoc tested positive for coronavirus.[7] By May 18, over 900 inmates and 17 staff members at FCI Lompoc were infected.[8] The skyrocketing and devastating numbers at other BOP facilities reveal a similarly dramatic and deadly explosion:

- FCI Terminal Island reported over 600 positive cases and 10 inmate deaths.[9]
- FCI Butner reported over 600 positive cases and 17 inmate deaths.[10]
- FCI Seagoville reported that over 1,300 inmates have tested positive for Covid-19.[11]

Overall in the Bureau of Prisons system, over 12,000 federal inmates and 1,000 BOP staff have been infected, with 124 federal inmate deaths and two staff member death. The fact that staff members have largely recovered while inmates are dying at such an alarming rate is a clear indication of the BOP's inability to adequately care for infected individuals within the system.

---

[5] Asher Stockler, *More than 700 people have tested positive for coronavirus on Rikers Island, including over 440 staff*, NEWSWEEK (April 8, 2020), found at https://www.newsweek.com/rikers-island-covid-19-new-york-city-1496872

[6] *COVID-19 in Correctional and Detention Facilities — United States, February–April 2020*, CENTERS FOR DISEASE CONTROL AND PREVENTION, MORBIDITY AND MORTALITY WEEKLY REPORT (May 6, 2020), found at https://www.cdc.gov/mmwr/volumes/69/wr/mm6919e1.htm

[7] Willis Jacobson, *Lompoc patient tests positive for COVID-19; first confirmed case in city* (March 26, 2020), https://lompocrecord.com/news/local/lompoc-patient-tests-positive-for-covid-19-first-confirmed-case-in-city/article_2c850540-0735-5616-b615-c674e4c146ea.html.

[8] https://www.bop.gov/coronavirus/

[9] https://www.bop.gov/coronavirus/

[10] *Id.*

[11] *Id.*

CR 20-131 SI
Defendant's Sentencing Memorandum

4

The pandemic also makes time served much more difficult. People incarcerated at Santa Rita Jail and in BOP facilities live in constant fear of being subjected to a guard or a new person transferred into their facility who gives them this deadly disease under circumstances where they are absolutely incapable of taking steps to avoid it. Recently, Mr. Escobar Ramos was one of 40 men locked in a unit who all contracted Covid-19. In this context, a sentence of one year and one day in custody will suffice to punish Mr. Escobar Ramos for the crime he committed; no legitimate goal of sentencing is advanced by increasing the risk to Mr. Escobar Ramos' physical health by subjecting him to a lengthy term of incarceration.

### 2.5 The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant as Set Forth in the Guidelines (18 U.S.C. § 3553(a)(4))

Mr. Escobar Ramos' base offense level is 12, the lowest offense level applicable to salescocaine base. U.S.S.G. § 2D1.1. Two levels are subtracted because Mr. Escobar Ramos intends to accept responsibility for his conduct by pleading guilty. U.S.S.G. § 3E1.1. In Mr. Escobar Ramos' criminal history category, IV, the resulting advisory Guideline range is 15-21 months.[12] For the reasons articulated above, Mr. Escobar Ramos submits that a variance of three months, to a sentence of one year and one day in custody, is appropriate here.

### 2.6 Unwarranted Sentencing Disparity (18 U.S.C. § 3553(a)(6))

While the requested sentence represents a variance from the guideline range, the variance is warranted in light of Mr. Escobar Ramos' conduct and history, as well as the additional time he will spend in immigration custody prior to his deportation. Additionally, the sentence is in accord with similarly situated defendants engaged in similar conduct swept up in the Tenderloin initiative.

### 3. CONCLUSION

Dionis Escobar Ramos is going to pay for the crime he committed, first by a term in

---

[12] Although Mr. Escobar Ramos maintains his objection to the PSR, it does not affect his criminal history category.

prison under exceptionally difficult and dangerous circumstances, then by a period in immigration custody. One year and one day's imprisonment is sufficient, but not greater than necessary, to serve the goals of 18 U.S.C. § 3553(a) in this case.

Dated: September 28, 2020

                                           Respectfully submitted,

                                           STEVEN G. KALAR
                                           Federal Public Defender

                                           _____/S/_____
                                           ELLEN V. LEONIDA
                                           Assistant Federal Public Defender